Good morning Mr. Johnson, you are reserved three minutes for rebuttal and you can begin whenever you're ready. Thank you Your Honor. It is important to ask you to be here on behalf of Son Williams, who pled guilty to being in the felony possession of a firearm and has sentencing his guideline range almost doubled because the district court concluded that his prior Vermont conviction for assault and robbery qualifies as a crime of violence. That was error. Vermont's assault and robbery defense is unique. For several reasons. The first of which is its history. For well over a century, Vermont had robbery statutes that were like most of the robbery statutes of this glorious state. They tied the taking or the larceny to the assault or threatened assault and made the assault the means by which the larceny or taking is achieved. But Vermont repealed the last of those provisions in 1975. In 1972, and in 1973, enacted the statute, and this is the 13 BSA section 608A that we're dealing with, which provides that a person who assaults another and mobs, steals, or takes from his or her person, or in the case of her presence, money, or other property is accused of the offense. Also- Could you clarify? I was struggling with, it seemed like your argument was that under the Vermont statute, if you happen to commit an assault and you happen to commit a robbery, you've satisfied the assault and robbery, but that the amendment that you just described eliminated any sort of requirement that the assault facilitate the robbery. Am I understanding that that's your view of the statute? It is. I think the language is very clear, including the language that Vermont Supreme Court has used to describe the statute. You know, the other- Can you remind me what case to look at to sort of understand that there doesn't need to be any sort of connection between the assault and the robbery in terms of causation? I'm not saying there doesn't need to be any connection, but I'm saying that the language of generic robbery is consistently the use or threaten, you know, obtaining property by the use or threatened use of physical force. This Court, other courts, consistently describe it that way, you know, the Connecticut and New York provisions of this Corte C and Carrera-Estrema and Carrera-Gomez are even more clear. It's the use of force for the purpose of obtaining property, but that's not what we have here. We have, you know, somebody who commits an assault and also, largely, commits an offense. So what's the connection under Vermont law between that assault and the lottery? The assault doesn't have to facilitate the larceny, or it just happens to coincide with the larceny? I think it, yes, they have to coincide, and it's, I think, a broader way of looking at what the Vermont General Assembly is concerned about. Is there a case law that tells us that that's how the Vermont Supreme Court has understood the statute, that it's sort of these two things happening kind of at the same time, but not, the assault doesn't have to facilitate the larceny? Sure. In Powell, the Court is dealing with a condition and actually, the defendant actually used force or threatened force because he robbed the victim at night point, but the Vermont Supreme Court says crime consists of the combined elements of assault and larceny, and thus, in the present case, the state's burden was to prove that the defendant intentionally put the victim in either imminent serious bodily injury and intentionally deprived him money intended to do so permanently, not that the defendant employed force or threatened force or assault for the purpose of... I see. Does that case also sort of suggest that these different strands of the assault statute are, in fact, divisible even as they relate to the robbery crime, just because the court identified the strand that would be appropriate for the facts charged rather than saying either A, B, or C? How does that play into the divisibility argument? Well, I think our divisibility argument is, on its face, 608A is not divisible. As to the Vermont Supreme Court itself, it incorporates the elements of simple assault, their implied elements. They don't need to be alleged in the information or charging document. They often aren't. I think it's enough to simply just allege the offense in the language of 608, and it's not clear the jury would have to be unanimous as to the type of assault. But they do have separate elements, and it is in the disjunctive, right? But the 1023A is definitely enumerated, phrased in the disjunctive. Let me just ask you, I want to focus on an argument in your reply brief that, assuming it is divisible, you argue that Taylor precludes the physical menacing subsection from being a crime or violence. But in this statute, the Vermont Supreme Court has said that it has to be an attempt by physical menace, and physical menace is defined as a threat by word or act to inflict physical injury upon another person. So under this subsection, you have to have a threat. So, Taylor, this is distinguishable from the circumstance in the Taylor, which said under the Hobbs Act, you don't necessarily have to have an attempted Hobbs Act. You don't have to have a threat. I think they're not, it's not distinguishable. The reading, am I wrong about, you agreed on page 19 of your brief that the Vermont Supreme Court has said physical menace requires a threat, right? Right, but it's an attempt. But it's not attempted physical menace, it's attempted by physical menace. There's a difference there, right? It's not that you have to attempt a threat, you have to attempt to cause serious bodily injury by physical menace, which requires a threat, right? I don't think so. I think the language that the Vermont Supreme Court uses, and the jury instructions, for example, that we cite are that all the state is going to have to prove is the intent to do, a specific intent to threaten by physical menace, and then some step towards the beginning of that act. It will not necessarily have to prove, in every case, categorically, that the defendant actually did any physical menace. I'm looking at the jury instructions that the Supreme Court approved in State v. Gagné, and it seems to me very clear that the attempt is tied to the causing fear of imminent bodily injury, and that physical menace is not linked to the attempt in that statute. It's an element that you need in its own right, not an attempted physical menace. Am I misreading the language of that opinion? I'm not sure I have it right in mind, but I think we're saying roughly the same thing, that because it's attempted attempts by physical menace... Well, no. Here's the instruction that the Vermont Supreme Court upheld in Gagné. It said, defendant attempted to put another person in fear of imminent serious bodily injury, and did so by using physical menace, and then defines physical menace as a threat by word or act to inflict physical injury upon another person. That suggests that the physical menace element isn't something that's subject to sort of an attempt description, that the attempt has to do with the effect you're hoping to bring about in the subject, or I guess the object of the... So I think... No, I guess I would return to our argument that this is, you know, the requirement of attempt is the state would just simply have to prove that specific intent, the intent to place someone in fear by physical menace, and then some steps toward that. All right, thank you. Okay, we'll hear from the government. Mr. Burris. Good evening, Mr. Clerk. My name is Nick Burris. I'm from the United States Attorney's Office in Bromington, Vermont. The defendant's claim of an erroneous guidelines calculation is without merit for three interrelated reasons which proceed in order, and I'd like to focus on the issues raised a moment ago, but before doing so, I'd like to quickly put those issues within the context of these three interrelated reasons. First, two Vermont statutes, sections 608 and 1023, are divisible, and thus the modified categorical approach as opposed to the categorical approach must be applied. Second, because the modified categorical approach applies, the plea colloquy from the underlying conviction demonstrates that the defendant's prior conviction here involved a violation of 1023A3. This is assault by physical menace rather than 1023A1 or A2 which require actual or attempted bodily injury. Then third, the offense of conviction here involving 1023A3 is a crime of violence under both the force clause and the enumerated clause in the sentencing guidelines. Now, even if there's some question about these clauses, the defendant fails to satisfy the reasonable probability test because he cites no case, including his own, showing that the state actually prostitutes this statute in the non-violent circumstances that he posits. Now, there was some question about divisibility a moment ago. I'll turn to that. Section 608 contains different penalties. This is a hallmark of divisibility in regard to 1023. As Judge Bianco noted, the statute contains the disjunctive or. This should easily resolve the question of divisibility, but additional confirmation can be found in various criminal Supreme Court decisions, Bacchus, Everett, Stone, which refer to the subjections of 1023 as elements, and the model jury instructions for 1023 separate out five different crimes within this particular statute. I was interested in the use of the model jury instructions in the argument. In some states, there are court-sanctioned jury instructions that are sort of published and have. It's not the force of law. They have the imprimatur. What's the provenance of the model Vermont jury instructions, and what persuasive effect, if any, do they have as to whether or not that's what the statute means in Vermont? Well, with regard to the divisibility question, I think there's really no need to get to the point where we review the jury instructions, so perhaps Your Honor is referring to the utility of the jury instructions in evaluating 608 under the enumerated clause, and from the government's perspective, this question is resolved in the Francis case. The Vermont Supreme Court, in that particular case, defined robbery as being consistent with both the Massachusetts and common law means of robbery, and under Matthews v. Barr, which cites the Supreme Court's case in Johnson, this court should defer to the Vermont Supreme Court's interpretation of this particular state statute, and under that, there really is no need to review the jury instructions. No, you invoked them, and so I was asking why, and why we care with the Vermont jury instructions. Certainly, my indication is related to visibility, and I think my response would be that's just additional confirmation of the fact that this is a divisible statute. Confirmation that some non-judicial body thought that's what the statute meant. That's correct, Your Honor. In several of this circuit's cases, it has indicated that it would appropriate to refer to jury instructions where there is question about the visibility. Right, you know, because that's where other states have, anyway, that's fine, other states have model jury instructions that actually have court involvement, and I was asking you whether that was true for Vermont. Sure, perhaps the court may give less weight to the jury instructions where there is no court involvement, but again, here, I don't think it's necessary to get to the I don't think there's much dispute that 1023-83 is a crime of conviction. The defendant's prior offense through the plea call that we showed that the defendant and another were wearing masks and dark clothing, ordered the victims to the floor, threatened them with firearms, and took their property. Because there's no actual or attempted injury here, that can only be a violation of 1023-83, assault by physical menace. The question then is whether 608, involving assault by physical menace, constitutes a violation or would match the force clause or the enumerated clause. Now, Judge Bianco, you had made a comment with regard to the force clause and the Vermont Supreme Court's case in Gagne. Judge Robbins, you may be especially familiar with that case as the author. The question of the force clause is whether the defendant's prior conviction has as an element the use, attempted use, or threatened use of force against the person of another, and that is squarely matched to the definition of physical menace in Gagne, which is defined as threatened use of physical force against the person of another. Now, Judge Bianco, you had asked whether the word attempt relates to physical menace or something else, and Judge Robbins, I think you rightly pointed out that the elements of this particular offense, 1023-83, divorce the word attempt from physical menace. Attempt is in first element, whereas physical menace is in the second element, and so this essentially, in practice, relieves the prosecution of proving that the victim was actually in fear, or put another way, the focus on the attempt is really on the defendant's conduct and not on the victim's actual reaction. Unless there are any other questions, the government will rest on its All right. Thank you. Mr. Johnson, you have three minutes in rebuttal. Just a couple of points. I think it's clear in the parenthesis that the government heard that this Vermont Supreme Court was looking to the Massachusetts Supreme Court solely as to whether it should infer an element as to the larceny intent to permanently deprive as to the larceny, not the connection between the larceny and the threat, which is our issue here. In terms of the 1023-83, I think that any reading that insists that a physical menace actually occurs, all but reads out the word attempt, it would dramatically change 1023-83, who essentially then be, you know, assault by physical menace instead of assault by attempted physical menace. Under Vermont law, attempt law, just like in most of the country, an attempt simply requires, you know, a specific intent requires, here it's an intention to physically menace somebody, but then it only takes, requires a step, some steps for the beginning of that offense. And so while the defendant may have intended, may have, you know, had that specific intent, there's just no requirement that the government prove as an element in every single case that there was the use of force, the threatened use of force, or the attempted use of force. We can add that, you know, you see in Mousowski, the Vermont Supreme Court has said that 1023-83 covers not just the completed acts, but also attempts. I think Judge Robinson asked about the model of jury instructions. They're not official Vermont Supreme Court jury instructions, but we regularly consult them, and I think they're useful and helpful, especially given the relatively smaller body of law that Vermont has. All right. Thank you. Thank you both. We'll reserve decision. Have a good day.